# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **P.H.**

**No. 21-0767** (Hampshire County 19-JA-49)

## MEMORANDUM DECISION

Self-represented petitioner A.W., the maternal grandmother of the child at issue, appeals the Circuit Court of Hampshire County's August 30, 2021, order denying her permanent placement of P.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Joyce E. Stewart, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying her permanent placement of the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The underlying proceedings began in October of 2019, when the DHHR filed an abuse and neglect petition against P.H.'s parents alleging that then-two-month-old P.H. suffered nonaccidental trauma while in their care. Evidence at the multiple adjudicatory hearings confirmed the DHHR's allegations that the child suffered injuries that were the result of nonaccidental trauma while in the parents' care. The evidence established that the child's injuries were extensive, including two skull fractures, one on each side of her head, with multiple bleeds inside the brain tissue and several areas that appeared to indicate the child had suffered a stroke. As a result of the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

child's injuries, she now suffers from disabilities and requires extensive special care. Ultimately, the court terminated the parents' parental rights in June of 2020.[2]

Relevant to petitioner's appeal, the record shows that as early as October of 2019, the DHHR inquired of the parents as to potential placement options for the child. According to the record, at that time both parents explicitly requested that the child *not* be placed with petitioner because petitioner "stated that she wished the baby had died." Petitioner later denied making any statement about the child's death. Instead, petitioner indicated that her statements were in reference to the child's father, with whom petitioner had a six-month romantic relationship that ended when the father expressed romantic interest in petitioner's daughter, the mother of the child at issue.

Additionally, the record shows that the DHHR had previously completed an assessment of petitioner's home in regard to her own minor stepdaughter, who was eight years old and displayed behavioral issues that necessitated the implementation of services. During this assessment, petitioner reported to the DHHR "that her stepdaughter was a danger to small children and animals." Petitioner further explained that "she could not have her grandbabies over because her stepdaughter would hurt them." According to petitioner, the stepdaughter's school principal "expressed concerns because the stepdaughter threatened to slit another peer's throat and to burn the peer's house down." Based upon this information, the DHHR determined that petitioner's home was not a viable option for placement of the child, "especially in light of the unexplained injuries [the child] sustained and her fragile medical condition."

Petitioner eventually filed a motion to intervene in the instant proceedings along with a motion for placement of P.H. The court held hearings on the motions, culminating in a hearing in August of 2021. Petitioner testified that her stepdaughter's behavioral issues had improved and that she did not believe that the stepdaughter posed a danger to P.H.

In regard to P.H., the court found that petitioner had never met the child and that in the two months prior to the child's removal, the parents would not permit petitioner to see the child due to her past statements regarding the child's death and over concerns of petitioner's jealousy from having previously dated the child's father. The court further found that the DHHR was "very cautious and diligent in securing appropriate placement for the minor child" because of the child's permanent injuries. The court noted that the child was medically fragile at the time of removal, as she was healing from multiple broken bones and severe head trauma. During the hearings, petitioner raised issues with the foster mother's status as a DHHR employee. The court found, however, that the foster mother had "only recently gained employment as an economic services worker" and that her employment status was "irrelevant as to the issues before the [c]ourt."

According to the court, petitioner "fails to recognize the extent of P.H.'s injuries and wishes to advance a theory that the medical experts, who provided treatment for the child, were incorrect and did not properly perform genetic testing" that could have explained the child's injuries.

---

[2]Both parents appealed, and this Court affirmed the terminations. *See In re P.H.-1, L.H. Jr., and P.H.-2*, 20-0657, 2021 WL 982767 (W. Va. March 16, 2021)(memorandum decision); *In re P.H.*, 20-0728, 2021 WL 982804 (W. Va. March 16, 2021)(memorandum decision).

According to petitioner, she believed the genetic testing done on the child "was purposely thwarted by the DHHR." The court found that petitioner's "persistent position that the DHHR is to blame" for the child's medical conditions and alleged medical maltreatment would only serve to inhibit the child's future medical and occupational treatments. The court also found that "[t]he degree of [petitioner's] hostility towards the DHHR can only diminish or preclude the child's receiving benefits which the DHHR can provide to meet her future medical and financial needs." Further, petitioner claimed to suffer from many genetic disorders herself, yet when questioned about these conditions, she stated, "I'm not giving a family history in this courtroom. I plead the fifth." Accordingly, the court found that petitioner "appears only willing to provide information about familial histories of medical conditions if the [c]ourt placed the child with her." The court also noted that petitioner testified to having a "great relationship" with her daughter, the child's mother, and testified that "the [c]ourt documents do not say that she cannot allow contact between the child and her daughter." Petitioner clarified, however, that "she would honor whatever the [c]ourt decided, but she felt that no contact was "awful extreme.'" According to the court, it was not convinced that petitioner would prevent contact between the child and her mother and that there was no way to guarantee the health, safety, and welfare of the child if she was placed in petitioner's care. Finally, the court found that petitioner "demonstrated a degree of callousness and lack of empathy for others by interrogating the foster mother, who is a cancer survivor, regarding whether she was recovered and the possibility that she was in fact terminal and facing [imminent] death."

Based on the foregoing, the court found that petitioner "has demonstrated an inability and unwillingness to place the child['s] . . . needs over her own needs and desires," which the court found was not in the child's best interest. The court further found that the child had been in her current foster home since she was approximately seven months old and that the foster parents "are the only constant people in P.H.'s life." The court cited the child's extreme bond with the foster parents, noting that although she is "unable to communicate like most children her age," the child "responds with excitement when [the foster parents] and their other children enter the room." The court also found that the foster parents "have gone above and beyond in their efforts to ensure for the health, safety, and welfare" of the child, including strict compliance with her extensive medical and therapeutic appointments. Ultimately, the court concluded that "to uproot a medically fragile child after fifteen (15) months of being placed in a safe, stable, loving environment, where she is loved, nurtured, safe, secure, and receiving all necessary medical treatments, would be more than detrimental to the child." As such, the court denied petitioner permanent placement of the child. It is from the order denying placement that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided

3

the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Further, we have explained that "the best interests of the child is the polar star by which decisions must be made which affect children." *Kristopher O. v. Mazzone*, 227 W. Va. 184, 192, 706 S.E.2d 381, 389 (2011) (citation omitted).

On appeal to this Court, petitioner fails to carry her burden of establishing reversible error. Even if we take into account that "[p]*ro se* pleadings and motions are held to less stringent standards that those drafted by lawyers," petitioner's appeal to this Court is wholly inadequate. *James M.B. v. Carolyn M.*, 193 W. Va. 289, 294 n.9, 456 S.E.2d 16, 21 n.9 (1995). Throughout her brief, petitioner makes outlandish claims that are incapable of substantiation, such as her assertion that transcripts of hearings held in this matter have been altered to remove information helpful to her position and to include information detrimental to her position. Petitioner also takes issue with the circuit court, claiming that the judge was "very rude towards" her and "refused to hear evidence of abuse and neglect that the minor child P.H. was submitted to in the care of" the DHHR. These unsupported arguments fail to entitle petitioner to relief. Without belaboring the specific facts, the record shows that petitioner sought the presiding judge's recusal, but that this Court refused that motion. Additionally, petitioner's repeated assertion that the DHHR, not the child's parents, is responsible for the child's condition is a fundamental reason the lower court denied petitioner placement of the child. On appeal to this Court, petitioner continues to advance this baseless theory which reinforces the circuit court's denial of placement in her home.

Petitioner also spends a considerable amount of her brief accusing various witnesses of lying during the proceedings. We find, however, that the circuit court was presented with the testimony in question and weighed the credibility of the various witnesses, and we decline to disturb these determinations on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Petitioner also alleges that the DHHR was biased against her and inappropriately supported the foster mother's attempt to obtain custody because the foster mother was a DHHR employee. As set forth above, however, the court found that the foster mother's recent employment with the DHHR was irrelevant to the issue of permanent placement. We agree. Simply put, petitioner cannot show that the DHHR exhibited any bias toward the foster mother. Similarly without merit is petitioner's assertion that the foster mother is an inappropriate placement for the child because she is away from the child while she works. As the circuit court correctly found, the foster mother's employment, much like petitioner's own employment, did not preclude her from being an appropriate caregiver.

Ultimately, petitioner argues that she was an appropriate placement for the child and that denial of permanent placement with her violated DHHR policy and state and federal law. Of particular importance, petitioner argues that the circuit court violated West Virginia Code § 49-3-1, which is a prior version of the statute setting forth the preference for placement of children with grandparents now found at West Virginia Code § 49-4-114(3). According to West Virginia Code

§ 49-4-114(3), "[f]or purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child." While it is true that this statute establishes a preference for placement with grandparents, we have explained that "[t]he preference is just that—a preference. It is not absolute. As this Court has emphasized, the child's best interest remains paramount." *In re K.E.*, 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018). What petitioner fails to recognize is that she was not unconditionally entitled to placement of the child, and certainly not when the evidence overwhelmingly established that such placement would be against the child's best interests given that her health, safety, and welfare could not be assured in petitioner's custody.

On appeal, petitioner makes much of the fact that her lack of a bond with the child was wrongfully held against her because the DHHR's interference caused that problem. However, this argument ignores the fact that petitioner's own child refused to allow petitioner to see P.H. for the first two months of her life over fears about petitioner's expressed disdain for the child's life and her jealousy over the fact that the child was conceived with petitioner's former paramour. Contrary to petitioner's assertion that the DHHR interfered with her relationship with the child, the record is clear that she had no such relationship to begin with, and that the child's parents, although abusive in their own right, nonetheless recognized the danger petitioner posed to the child's safety. Those concerns were amplified by petitioner's continued assertion that the child did not suffer nonaccidental trauma in the parents' care but, instead, simply suffered from a genetic condition that caused her to be more prone to injury—a genetic condition that testing ultimately proved the child did not possess. Even in the face of this concrete testing, petitioner accused the DHHR of thwarting the test and continued to espouse baseless accusations, all of which illustrated her lack of fitness to care for the child. As such, we find no error in the court's denial of permanent placement with petitioner.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 30, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: March 9, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment

5